**JASON I. SER**
California State Bar No. 201816
FEDERAL DEFENDERS OF SAN DIEGO, INC.
225 Broadway, Suite 900
San Diego, California 92101-5008
Telephone: (619) 234-8467
jason_ser@fd.org

Attorneys for Mr. Castillo

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE JANIS L. SAMMARTINO)**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JESUS CASTILLO (3),<br><br>Defendant. | Case No.: 08cr2590-JLS<br><br>Date: September 5, 2008<br>Time: 1:30 p.m.<br><br>**NOTICE OF MOTIONS AND MOTIONS TO:**<br><br>**(1) PRESERVE AND INSPECT EVIDENCE;**<br>**(2) COMPEL DISCOVERY;**<br>**(3) DISMISS INDICTMENT DUE TO MISINSTRUCTION OF GRAND JURY;**<br>**(4) PRODUCTION OF THE TRANSCRIPT FOR THE JUNE 2008 GRAND JURY'S IMPANELMENT; AND,**<br>**(5) GRANT LEAVE TO FILE FURTHER MOTIONS** |

TO: KAREN P. HEWITT, UNITED STATES ATTORNEY; AND
CHRISTOPHER P. TENORIO, ASSISTANT UNITED STATES ATTORNEY:

**PLEASE TAKE NOTICE** that on September 5, 2008, at 1:30 p.m., or as soon thereafter as counsel may be heard, the accused, Jesus Castillo, by and through his attorneys, Jason I. Ser and Federal Defenders of San Diego, Inc., will ask this Court to enter an order granting the motions outlined below.

//

//

//

**MOTIONS**

Defendant, Mr. Castillo, by and through his attorneys, Jason I. Ser and Federal Defenders of San Diego, Inc., pursuant to the United States Constitution, the Federal Rules of Criminal Procedure, and all other applicable statutes, case law and local rules, hereby moves this Court for an order to:

(1) Preserve and Inspect Evidence;
(2) Compel Discovery;
(3) Dismiss Indictment Due to Misinstruction of Grand Jury;
(4) Production of the Transcript for the July 2008 Grand Jury's Impanelment; and,
(5) Grant Leave to File Further Motions.

These motions are based upon the instant motions and notice of motions, the attached statement of facts and memorandum of points and authorities, and any and all other materials that may come to this Court's attention at or before the time of the hearing on these motions.

Respectfully submitted,

DATED: August 22, 2008

*/s/ Jason I. Ser*

JASON I. SER
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Castillo
E-mail: jason_ser@fd.org

**JASON I. SER**
California State Bar No. 201816
FEDERAL DEFENDERS OF SAN DIEGO, INC.
225 Broadway, Suite 900
San Diego, California 92101-5008
Telephone: (619) 234-8467
jason_ser@fd.org

Attorneys for Mr. Castillo

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE JANIS L. SAMMARTINO)**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>JESUS CASTILLO (3),<br>Defendant. | Case No.: 08cr2590-JLS<br>Date: September 5, 2008<br>Time: 1:30 p.m.<br>**STATEMENT OF FACTS AND POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS** |

**I.**

**STATEMENT OF FACTS**[1]

On July 26, 2008, at approximately 3:30 a.m., a United States Coast Guard helicopter unit radioed to a United States Customs and Border Protection (CBP) vessel that a vessel was hovering near La Jolla, that there were three occupants aboard, and that it was not displaying any lights. In response to this radio communication, the CBP vessel set course to intercept the hovering vessel, which eventually appeared on the CBP vessel's radar instrumentation.

From approximately fifty yards away, agents used a spotlight situated upon the CBP vessel to illuminate the hovering vessel. Agents aboard the CBP vessel identified it as a "panga" with one visible occupant. The driver of the panga, later identified as Jose Avilez, proceeded to speed away from the CBP

[1] The facts alleged in these motions are subject to elaboration and/or modification at the time these motions are heard. Mr. Castillo reserves the right to take a position contrary to the following statement of facts at the motions hearing and at trial.

vessel and drive erratically. The CBP vessel then activated blue strobe lights and siren. During the pursuit that ensued, agents could see three people aboard the panga.

Pursuant to CBP's Small Boat Interdiction Program (SBIP) protocol, agents decided to fire warning shots from a shotgun. The warning shots were fired from a shotgun manned by an agent aboard the CBP vessel while it was moving. The warning shots were fired "across the bow of the absconding vessel."[2] As this was happening, another agent was "covering the suspect vessel for officer safety in accordance with the SBIP." Despite the alleged "dangerous and erratic maneuvers" by the panga driver, agents also decided to fire two disabling rounds from a shotgun into the panga's outboard engine's cowling in order to disable it and prevent it from operating. The two disabling rounds from a shotgun caused the engine to cut out and the panga to come to a stop on the ocean at which time the panga's driver placed his arms in the above his head.

Upon coming alongside the panga, agents saw the panga contained several large bundles. The bundles were semi-covered by a nylon tarp. Agents "pulled" all three occupants from the panga to the CBP vessel where they were "detained." Agents then conducted "field interrogations" of all three individuals, including Mr. Castillo. In response to direct questioning by the agents, Mr. Castillo stated that he was a citizen of Mexico with no papers or permits to be in the United States legally. He denied being owner of the panga. The CBP vessel later transported them to the Marine Corp Recruit Depot (MCRD).

A total of 232 packages were confiscated with a total gross weight of 482 kilograms. Field tests were positive for the presence of marijuana.

Agents from United States Border Patrol as well as the Drug Enforcement Agency responded to the scene and eventually transported all three individuals from MCRD to the San Ysidro Port of Entry for processing. These agents also took custody of the panga, its contents, and the contraband.

At the port of entry, agents from these two agencies interrogated Roberto Guzman and Jose Avilez. Mr. Guzman admitted he discovered the marijuana bundles aboard the panga, but only once he was already at sea with no way off the panga. He further explained that he initially boarded the vessel believing he would be assisting in the delivery of goods to fisherman. Mr. Avilez informed agents that individuals

---

[2] The quotations herein are culled from CBP reports provided in discovery.

coerced him into complying with the smuggling venture by threatening harm to his family. He described how several men who took him to the Coronado Islands in Mexico, where he met Mr. Guzman and Mr. Castillo. Mr. Avilez explained that the unknown men who took him to the islands gave him instructions and tools to complete the smuggling operation. According to reports, nothing indicates Mr. Guzman or Mr. Castillo was similarly instructed. Mr. Avilez acknowledged he was told marijuana was on the boat and that he was told to drive north in a straight line for two hours. Eventually, upon reaching a beach, he would receive a telephone call from an unknown individual.

No interrogation of Mr. Castillo purportedly ensued due to his being incoherent. Mr. Castillo, accordingly, was admitted into the Alvarado Hospital for evaluation and treatment.

On August 6, 2008, Mr. Castillo was charged by a grand jury in an indictment with violations of 21 U.S.C. §§ 952, 960, and 963, conspiracy to import marijuana, 21 U.S.C. §§ 952 and 960, importation of marijuana, 21 U.S.C. §§ 841(a)(1) and 846, conspiracy to possess marijuana with the intent to distribute, 21 U.S.C. §§ 841(a)(1), possession of marijuana with the intent to distribute, and 18 U.S.C. § 2, aiding and abetting. He pled not guilty to these charges.

## II.

## MOTION TO PRESERVE AND INSPECT EVIDENCE

Mr. Castillo requests the preservation of all physical evidence in this case. This includes any evidence that may be destroyed, lost, or otherwise put out of the possession, custody, or care of the government (or its private contractors) in this case. See United States v. Riley, 189 F.3d 802, 806-808 (9th Cir.1999). This request includes, but is not limited to: (1) the Panga vessel in this case and its contents; (2) the alleged contraband involved in the case, including samples used to conduct tests; (3) the containers or packaging within which the contraband was discovered; (4) the results of any fingerprint analysis; (4) any videotapes capturing Mr. Castillo or any third party in relation to this case, including any surveillance footage captured by law enforcement; (5) any recorded communications made by government officials related to the above captioned case, e.g., dispatch prior to/during the vessel's stop; and, (6) the defendant's personal effects. Mr. Castillo requests that government counsel be ordered to notify the agencies and private contractors with custody of such evidence be informed of the Court's preservation order.

Further, Mr. Castillo requests an order granting defense counsel and/or their investigators access to the Panga vessel and its contents as well as the alleged contraband or other items seized for the purposes of investigation, including inspection, photographing, and re-weighing of the alleged contraband. Fed. R. Crim. P. 16(a)(1)(E). A proposed Order is attached for the convenience of the Court.

Mr. Castillo requests that the evidence in the case be preserved throughout the pendency of the case, including any appeals.

**III.**

**MOTION TO COMPEL DISCOVERY**

Mr. Castillo moves for the production of the following discovery. This request is not limited to those items that the prosecutor knows of, but rather includes all discovery listed below that is in the custody, control, care, or knowledge of any "closely related investigative [or other] agencies." See United States v. Bryan, 868 F.2d 1032 (9th Cir.), cert. denied, 493 U.S. 858 (1989).

(1) The Defendant's Statements. The Government must disclose to the defendant all copies of any written or recorded statements made by the defendant; the substance of any statements made by the defendant which the Government intends to offer in evidence at trial; any response by the defendant to interrogation; any written summaries of the defendant's oral statements contained in the handwritten notes of the Government agent(s) as well as any reports containing such; any response to any Miranda warnings which may have been given to the defendant; as well as any other statements by the defendant. Fed. R. Crim. P. 16(a)(1)(A)-(B). The Advisory Committee Notes and the 1991 amendments to Rule 16 make clear that the Government must reveal all the defendant's statements, whether oral or written, regardless of whether the government intends to make any use of those statements.

(2) Arrest Reports, Notes and Dispatch Tapes. The defendant also specifically requests the Government to turn over all arrest reports, notes, dispatch or any other tapes, and TECS records that relate to the circumstances surrounding his arrest or any questioning. This request includes, but is not limited to, any rough notes, records, reports, transcripts or other documents in which statements of the defendant or any other discoverable material is contained. Such material is discoverable under Fed. R. Crim. P. 16(a)(1)(A)-(B) and Brady v. Maryland, 373 U.S. 83 (1963). The Government must produce arrest reports, investigator's notes, memos from arresting officers, dispatch tapes, sworn statements, and prosecution

reports pertaining to the defendant. See Fed. R. Crim. P. 16(a)(1)(A) and (B), Fed. R. Crim. P. 26.2 and 12(h).

(3) Brady Material. The defendant requests all documents, statements, agents' reports, and tangible evidence favorable to the defendant on the issue of guilt and/or which affects the credibility of the Government's case. Under Brady, impeachment as well as exculpatory evidence falls within the definition of evidence favorable to the accused. United States v. Bagley, 473 U.S. 667 (1985); United States v. Agurs, 427 U.S. 97 (1976).

(4) Any Information That May Result in a Lower Sentence Under The Guidelines. The Government must produce this information under Brady v. Maryland, 373 U.S. 83 (1963). This request includes any cooperation or attempted cooperation by the defendant as well as any information that could affect any base offense level or specific offense characteristic under Chapter Two of the Guidelines. The defendant also requests any information relevant to a Chapter Three adjustment, a determination of the defendant's criminal history, and information relevant to any other application of the Guidelines.

(5) The Defendant's Prior Record. The defendant requests disclosure of his prior record. Fed. R. Crim. P. 16(a)(1)(D).

(6) Any Proposed 404(b) Evidence. The government must produce evidence of prior similar acts under Fed. R. Crim. P. 16(a)(1)(D) and Fed. R. Evid. 404(b) and 609. In addition, under Rule 404(b), "upon request of the accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the general nature . . ." of any evidence the government proposes to introduce under Fed. R. Evid. 404(b) at trial. The defendant requests that such notice be given three (3) weeks before trial in order to give the defense time to adequately investigate and prepare for trial.

(7) Evidence Seized. The defendant requests production of evidence seized as a result of any search, either warrantless or with a warrant. Fed. R. Crim. P. 16(a)(1)(E).

(8) Tangible Objects. The defendant requests the opportunity to inspect and copy as well as test, if necessary, all other documents and tangible objects, including photographs, books, papers, documents, fingerprint analyses, vehicles, or copies of portions thereof, which are material to the defense or intended for use in the Government's case-in-chief or were obtained from or belong to the defendant. Fed. R. Crim. P. 16(a)(1)(E).

(9) Evidence of Bias or Motive to Lie. The defendant requests any evidence that any prospective Government witness is biased or prejudiced against the defendant, or has a motive to falsify or distort his or his testimony.

(10) Impeachment Evidence. The defendant requests any evidence that any prospective Government witness has engaged in any criminal act whether or not resulting in a conviction and whether any witness has made a statement favorable to the defendant. See Fed R. Evid. 608, 609 and 613; Brady v. Maryland, supra.

(11) Evidence of Criminal Investigation of Any Government Witness. The defendant requests any evidence that any prospective witness is under investigation by federal, state or local authorities for any criminal conduct.

(12) Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling. The defense requests any evidence, including any medical or psychiatric report or evaluation, that tends to show that any prospective witness' ability to perceive, remember, communicate, or tell the truth is impaired, and any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic.

(13) Witness Addresses. The defendant requests the name and last known address of each prospective Government witness. The defendant also requests the name and last known address of every witness to the crime or crimes charged (or any of the overt acts committed in furtherance thereof) who will not be called as a Government witness.

(14) Name of Witnesses Favorable to the Defendant. The defendant requests the name of any witness who made an arguably favorable statement concerning the defendant or who could not identify him who was unsure of his identity, or participation in the crime charged.

(15) Statements Relevant to the Defense. The defendant requests disclosure of any statement relevant to any possible defense or contention that he might assert.

(16) Jencks Act Material. The defendant requests production in advance of trial of all material, including dispatch tapes, which the government must produce pursuant to the Jencks Act, 18 U.S.C. § 3500. Advance production will avoid the possibility of delay at the request of defendant to investigate the Jencks material. A verbal acknowledgment that "rough" notes constitute an accurate account of the witness'

interview is sufficient for the report or notes to qualify as a statement under § 3500(e)(1). Campbell v. United States, 373 U.S. 487, 490-92 (1963). In United States v. Boshell, 952 F.2d 1101 (9th Cir. 1991) the Ninth Circuit held that when an agent goes over interview notes with the subject of the interview the notes are then subject to the Jencks Act.

(17) Giglio Information. Pursuant to Giglio v. United States, 405 U.S. 150 (1972), the defendant requests all statements and/or promises, express or implied, made to any Government witnesses, in exchange for their testimony in this case, and all other information which could arguably be used for the impeachment of any Government witnesses.

(18) Agreements Between the Government and Witnesses. The defendant requests discovery regarding any express or implicit promise, understanding, offer of immunity, of past, present, or future compensation, or any other kind of agreement or understanding, including any implicit understanding relating to criminal or civil income tax, forfeiture or fine liability, between any prospective Government witness and the Government (federal, state and/or local). This request also includes any discussion with a potential witness about or advice concerning any contemplated prosecution, or any possible plea bargain, even if no bargain was made, or the advice not followed.

(19) Informants and Cooperating Witnesses. The defendant requests disclosure of the names and addresses of all informants or cooperating witnesses used or to be used in this case, and in particular, disclosure of any informant who was a percipient witness in this case or otherwise participated in the crime charged against Mr. Castillo. The Government must disclose the informant's identity and location, as well as disclose the existence of any other percipient witness unknown or unknowable to the defense. Roviaro v. United States, 353 U.S. 53, 61-62 (1957). The Government must disclose any information derived from informants which exculpates or tends to exculpate the defendant.

(20) Bias by Informants or Cooperating Witnesses. The defendant requests disclosure of any information indicating bias on the part of any informant or cooperating witness. Giglio v. United States, 405 U.S. 150 (1972). Such information would include what, if any, inducements, favors, payments or threats were made to the witness to secure cooperation with the authorities.

(21) Government Examination of Law Enforcement Personnel Files. Mr. Castillo requests that the Government examine the personnel files and any other files within its custody, care or control, or which

could be obtained by the government, for all testifying witnesses, including testifying officers. Mr. Castillo requests that these files be reviewed by the Government attorney for evidence of perjurious conduct or other like dishonesty, or any other material relevant to impeachment, or any information that is exculpatory, pursuant to its duty under United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991). The obligation to examine files arises by virtue of the defense making a demand for their review: the Ninth Circuit in Henthorn remanded for in camera review of the agents' files because the government failed to examine the files of agents who testified at trial. This Court should therefore order the Government to review all such files for all testifying witnesses and turn over any material relevant to impeachment or that is exculpatory to Mr. Castillo prior to trial. Mr. Castillo specifically requests that the prosecutor, not the law enforcement officers, review the files in this case. The duty to review the files, under Henthorn, should be the prosecutor's. Only the prosecutor has the legal knowledge and ethical obligations to fully comply with this request.

(22) Expert Summaries. Defendant requests written summaries of all expert testimony that the government intends to present under Federal Rules of Evidence 702, 703 or 705 during its case in chief, written summaries of the bases for each expert's opinion, and written summaries of the experts' qualifications. Fed. R. Crim. P. 16(a)(1)(F). This request includes, but is not limited to, fingerprint expert testimony.

(23) Residual Request. Mr. Castillo intends by this discovery motion to invoke his rights to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the Constitution and laws of the United States. This request specifically includes all subsections of Rule 16. Mr. Castillo requests that the Government provide him and his attorney with the above requested material sufficiently in advance of trial to avoid unnecessary delay prior to cross-examination.

## IV.

## MOTION TO DISMISS THE INDICTMENT DUE TO MISINSTRUCTION OF THE GRAND JURY AND FOR PRODUCTION OF THE TRANSCRIPT FOR THE JUNE 2008 GRAND JURY'S IMPANELMENT

Mr. Castillo is requesting a copy of the transcript of the June 2008 grand jury impanelment. The transcript is needed to examine the record of what specific instructions were given to the grand jurors relating to their powers, or lack thereof. Based in part of the review of the grand jury instructions given in

the past, including those provided during impanelment of the January and July 2007 panels as well as the model grand jury charge approved by the judicial conference of the United States, March 2005, see http://www.uscourts.gov/jury/charge.html, which provides the template for grand jury's impanelment instructions, Mr. Castillo believes that the grand jury in his case was improperly instructed.

As such, Mr. Castillo moves to dismiss the Indictment due to misinstruction of the July 2008 Grand Jury. Mr. Castillo's arguments are essentially those set out in Judge Hawkins' dissents in United States v. Marcucci, 299 F.3d 1156 (9th Cir. 2002), cert. denied, 1538 U.S. 934 (2003), and United States v. Navarro-Vargas, 408 F.3d 1184 (9th Cir. 200) (en banc), and Judge Kozinski's dissent in the three-judge panel opinion in United States v. Navarro-Vargas, 367 F.3d 896 (9th Cir. 2004), opinion vacated by and en banc review granted by United States v. Navarro-Vargas, 367 F.3d 920 (9th Cir. 2004), and he incorporates those arguments by reference.

FED. R. CRIM. P. 6(e)(3)(E) states in pertinent part:

> The court may authorize disclosure -- at a time, in a manner, and subject to any other conditions that it directs -- of a grand-jury matter:
>
> ***
>
> (ii) at the request of a defendant who shows that *a ground may exist* to dismiss the indictment because of a matter that occurred before the grand jury.

FED. R. CRIM. P. 6(e)(3)(E)(ii) (emphasis added). While grand jury proceedings are usually secret, see Rule 6(e)(2), exceptions are made when a defendant "shows that a ground may exist to dismiss the indictment." Rule 6(e)(3)(E)(ii). The Court may order disclosure of grand jury proceedings "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). The Ninth Circuit requires a "particularized need" to justify disclosure, see United States v. Walczak, 785 F.2d 852, 857 (9th Cir. 1986), but that need cannot be any different than the standard set forth in Rule 6(e)(3)(E)(ii): Mr. Castillo need only show that "a ground *may* exist to dismiss the indictment because of a matter that occurred before the grand jury." FED. R. CRIM. P. 6(e)(3)(E)(ii) (emphasis added). That is why the Rule's "general suggestion [is] in favor of disclosure." See Walczak, 785 F.2d at 857.

Disclosure of the grand jury transcript is the only manner in which Mr. Castillo can ascertain whether at the time of its *impanelment* the grand jury was properly instructed on its powers. After all, the

transcript of the grand jury impanelment is the only record of these challenged instructions, and thus, must be disclosed under Rule 6(e)(3)(E)(ii). The requested information only involves the instructions given to the grand jurors, not a portion of the grand jury proceedings that invokes the public's interest in secrecy. Further, the statute only requires that Mr. Castillo show that a ground may exist. Rule 6(e)(3)(E)(ii). That showing has been made in this case.

## V.

## MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS

Defense counsel requests leave to file further motions and notices of defense based upon information gained in the discovery process as well as defense investigation. In particular, Mr. Castillo intends to file, at the least, motions to suppress any statements subsequent to his being "pulled" from the panga and detained, and possibly the stop in this case. Counsel for Mr. Castillo only received discovery late in the afternoon on August 21, 2008 and has not had time to meet with Mr. Castillo to review it or conduct discovery. Counsel also intends to request additional discovery from government counsel in support of additional motions to be filed.

## VI.

## CONCLUSION

For these and all the foregoing reasons, the defendant, Mr. Castillo, respectfully requests that this Court grant his motions and grant any and all other relief deemed proper and fair.

Respectfully submitted,

DATED: August 22, 2008

*s/ Jason I. Ser*

JASON I. SER
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Castillo
E-mail: jason_ser@fd.org

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. JESUS CASTILLO, Defendant. | Case No. 08CR2590-JLS<br>CERTIFICATE OF SERVICE |

Counsel for Defendant certifies that the foregoing pleading, is true and accurate to the best of his information and belief, and that a copy of the foregoing Defendant's Notice of Motions and Motions has been electronically served this day upon:

Christopher Tenorio
Assistant U.S. Attorney
880 Front Street
San Diego, CA 92101

Dated: August 22, 2008

*/s/ Jason I. Ser*

JASON I. SER
Federal Defenders
225 Broadway, Suite 900
San Diego, CA 92101-5030
(619) 234-8467 (tel)
(619) 687-2666 (fax)
jason_ser@fd.org